Nicholson, C. J.,
delivered the opinion of the Court.
*101 One of tbe objects of the bill in this case was to enjoin defendants Echols and Frazier from enforcing a writ of, possession which issued from the Circuit Court of Dyer county, by which the sheriff was ordered to dispossess complainant of a tract of land, and put defendants Echols and Frazier in possession. The writ of injunction issued, and was made known to D. P. Pierce, the deputy sheriff, who had the writ of possession issued from the Circuit Court. Defendant Echols directed the deputy sheriff to proceed and dispossess complainant, regardless of the injunction, and promised that he would be responsible for the consequences. This occurred on the 29th of December, 1868. The deputy sheriff, on that evening, went to the house of complainant, and about sundown commenced operations, and in about an hour and a half executed his writ by turning out the family, consisting-of complainant, his wife, and about half a dozen children— several of them small — together with all their goods and chattels. It was a cold, rainy night; the wife was feeble and sickly, and some of the children then sick. There was no vacant house to he had in the neighborhood, except a barn, into which the complainant and his family were permitted by the owner to go, after they had remained in- the woods two or three days.
Upon application to the Chancellor, these facts being verified by affidavit, an attachment issued against the deputy sheriff and Echols, for contempt in disobeying and violating the writ of injunction. Echols appeared and answered, admitting his knowledge of the *102 issuance of the injunction, and his directions to the deputy sheriff to execute the writ of possession, but excusing himself on the ground that he was irritated by the conduct of complainant in failing to give up the possession as he had promised, and because, instead of giving possession according to promise, he had procured the writ of injunction. The proceeding as to the deputy sheriff was dismissed by complainant.
The Chancellor held that Echols was guilty of contempt, but not being satisfied as to the damages which ought to be assessed against him, referred the matter to the Clerk and Master to take proof and report.
The order of the Chancellor was, that Echols should pay to the complainant “the damage caused by his being kept out of .the possession of said land from which he was ejected on the 29th of December, 1868, until the last January Term of the Court.”
The Clerk and Master proceeded to take the depositions of many witnesses, and, at the next term, reported that defendant Echols ought to pay $300 damages, according to the proof, all of which accompanied his report.
Defendant Echols then excepted to the report, because the amount allowed by the Clerk and Master was not sustained by the proof, and was too large.
The Chancellor disallowed the exception of defendant Echols, and overruled a motion to recommit the report; and, thereupon, confirmed the report and gave judgment for $300 against defendant Echols.
No application was made by either party for a jury to try the facts in' connection with the question of *103 damages. Defendant Eebols appealed from tbe decree to tbis Court.
The first objection taken to the decree is, that the Chancellor adopted an erroneous rule for arriving at the measure of damages, and that he ought only to have allowed for “the actual pecuniary loss directly sustained” by complainant. The power of the several Courts to issue attachments and inflict punishment for contempt is limited to the cases enumerated in sec. 4106 of the Code, among which is: “The willful disobedience or resistance of any officer of the said Courts, party, juror, witness, _or any other person, to any lawful writ, process, order, rule, decree, or command of said Courts.”
By sec. 4107, the punishment for contempt may be by fine or imprisonment, or both; but where not otherwise specially provided, the Courts are limited to a fine not exceeding $50, and imprisonment not exceeding ten days.
By sec. 4109, “if the contempt consists in the performance of a forbidden act, the person may be • imprisoned until the act is rectified by placing matters and person in statu, quo, or by the payment of damages.”
The case before us falls under this section, and the Chancellor had the discretion either to hold the defendant Echols in prison until complainant and his family and his property were returned and restored to the house from which they were illegally removed, or to require defendant to pay such damages as would compensate complainant for his unlawful ejectment from the house. The question arising is, did the Legisla *104 ture mean that “the actual pecuniary loss directly sustained” was to be the measure of damages to which the complainant was entitled; or did it mean the actual damage estimated in connection with the condition of complainant’s family — the circumstances of aggravation or mitigation attending the disobedience of the order, such as the ejection in the night time, during the prevalence of a cold rain, the length of time kept out of possession, the suffering consequent upon being unable to find a shelter for his family, etc.
It must not be overlooked that the willful disobedience of, or resistance to, a lawful process of a Court is a high offence, and the very existence of the Courts requires that such offences should be followed by promjff punishment.
As a general rule, the punishment will be confined to fine or imprisonment, and the extent of one or both, not exceeding the limit prescribed, Avill be governed by the facts and circumstances of each case. The mode of punishment by fine and imprisonment is intended to vindicate and protect the just power and integrity of the Court.
But sec. 4109 goes further — it combines punishment by way of vindicating the Court, with damages by way of compensating the party for injury arising from the illegal disobedience of the process of the Court. The actual injury thus sustained, ascertained by viewing all the facts and circumstances, will constitute the measure of damages in each case. It is said by Mr. Sedgwick, p. 33, that “in all cases growing out of the non-performance of contracts, and in those of infringe *105 ments of rights, or non-performance of duties created or imposed by tbe law, in which there is no element of fraud, willful negligence or malice, the compensation recovered in damages consists solely of the direct pecuniary loss,” etc. But on page 35, he adds: “"Where fraud, malice, gross negligence or oppression intervenes, the law adopts a wholly different rule.” “It blends together the interest of society and of the aggrieved individual, and gives damages not only to recompense the sufferer, but to punish the offender.”
Such was the object of the Legislature in subjecting a party willfully disobeying a process of Court to punishment and to the payment of damages — to punish him for the contempt, and to make him liable for the damages inflicted, by his disobedience of the process, upon the party injured.
In this view of the law, the exception to the action of the Chancellor, confirming the report of the Clerk and Master, is not well taken. A number of witnesses, acquainted with the circumstances, were examined as to the damages. One or two of them manifest their indignation at the conduct of the defendant Echols, by saying, that under similar circumstances they would have died before they would have been turned out. They say the damage can not be estimated by them in dollars. But one witness, estimates the damages at less than $300 — that one was the deputy sheriff who executed the writ. He was of opinion that $30 would be sufficient compensation for turning a man and his wife and several small children out of doors, on a cold rainy December night, to wander without *106 shelter for two or three days in the woods, and then to find relief only in a barn, for a month. But this witness stands “solitary and alone” in his opinion, while most of the other witnesses estimate the damages at from fiv.e hundred to a thousand dollars, some of them agreeing that $300 would be reasonable. We think the facts and circumstances proven fully justified the Chancellor in confirming the report of the Clerk and Master, and giving judgment for $300.
It is nest said, that the facts as to the damages presented a proper case for the empanneling of a jury. That is true, and either party had the right to demand a jury to pass upon the facts. But neither party asked for a jury. This was a waiver of the right, and it is now too late to put the Chancellor in error for not granting a right which was not claimed.
The decree is affirmed with costs.